IN THE UNITED STATES DISTRICT COURT FOR THE **FILED**
EASTERN DISTRICT OF OKLAHOMA

AUG 1 6 2011

WILLIAM B. GUTHRIE
Clerk, U.S. District Court
By_____
Deputy Clerk

CHARLES BEEN, et al.,                    )
                                         )
          Plaintiffs and Class Representatives,    )
                                         )
v.                                       )    Case No. CIV-02-285-RAW
                                         )
O.K. INDUSTRIES, INC., et al.,           )
                                         )
          Defendants.                    )

## REPORT AND RECOMMENDATION

This case comes before the Court on Plaintiffs' Motion to Approve Plan of Distribution

(Doc. No. 664) and Class Counsel's Motion for Attorney's Fees, Nontaxable Costs, and Class

Representative Fees (Doc. No. 665). The latter motion, as well as issues presented in the Notice

entered by the District Court (Doc. No. 671), have been referred to the undersigned for report

and recommendation.[1] Upon review of the motions, affidavits, and evidentiary materials filed by

Plaintiffs, and the arguments and evidence presented at the hearing held on July 15, 2011, the

Court sets forth the following findings of fact and conclusions of law.

### FINDINGS OF FACT

**A.    Notice**

1.     On June 25, 2011, U.S. District Judge Ronald A. White approved and entered a

Notice for publication to Class Members. The Notice described the relief requested in Plaintiffs'

Motion to Approve Plan of Distribution and Class Counsel's Motion for Attorney's Fees,

---

[1] By Order dated June 25, 2011, the District Court granted Plaintiffs' Motion to Approve Plan of
Distribution. However, certain relief requested in that Motion is set forth in the Notice, and
issues relating to the Notice were referred to the undersigned for report and recommendation.
For thoroughness, and because there is no difference as to the result reached, this report and
recommendation will address all of the issues set forth in the Notice.

Nontaxable Costs, and Class Representative Fees, as well as each Class Member's rights and obligations with respect thereto. *See* Doc. No. 671.

2.    Among other things, the Notice states:

Any Class Member has the right to object to the various motions described in this notice, including the requested fees and expenses for Class Counsel, fees for the five Class Representatives, formula for distribution to Class Members, and/or appointment of Rust Consulting as Administrator. All objections must be filed, in writing, in the U.S. District Court for the Eastern District of Oklahoma, by July 6, 2011.

...

A hearing will be held on July 15, 2011 to consider the various motions and requests described in this notice. If no proper objection is made, or the objector does not appear at the hearing, distributions from the Common Fund will be made as requested by Class Counsel and as specified in this notice.

3.    As reported by Class Counsel, the Notice was (a) mailed to approximately 318 known Class Members at their last known addresses, on June 28, 2011, and (b) published in both the Southwest Times Record and Poteau Daily News, on June 30, 2011. Class Counsel further reported that additional copies of the Notice had been mailed to Class Members and/or other interested parties who subsequently requested them from Class Counsel.

4.    No objection was filed by July 6, 2011 (or thereafter) with respect to any of the relief described in the Notice, including specifically the distributions set forth in Plaintiffs' Motion to Approve Plan of Distribution and Class Counsel's Motion for Attorney's Fees, Nontaxable Costs, and Class Representative Fees. Further, no person appeared at the July 15, 2011 hearing to be heard in opposition to the requested relief.

**B.    Litigation History and Background**

5.    Plaintiffs' initial Class Action Complaint was filed over nine years ago, in May of 2002. Five contract broiler growers for Defendants – Charles Been, Donald Frost, Edwin

2

Johnston, Bob Fields, and Gene Blackwell – sued Defendants for, among other things, violation of § 202(a) of the Packers and Stockyards Act, 7 U.S.C. § 181 *et seq*.. Plaintiffs ultimately secured a judgment for the Class of $14,511,935, plus costs and interest.

6.      The law firm hired by the Plaintiffs to represent them was Crowe & Dunlevy, P.C.. In 2004, pursuant to Fed. R. Civ. P. 23, the District Court certified the case to proceed as a class action. The Court appointed Crowe & Dunlevy to represent the entire Class as "Class Counsel" and Messrs. Been, Frost, Johnston, Fields, and Blackwell to act on behalf of the Class as "Class Representatives."

**C.      Creation of a Common Fund**

7.      The Court finds that the action has created "a common fund, the economic benefit of which is shared by all members of the class." *Hall v. Cole*, 412 U.S. 1, 5 n.7 (1973).

8.      The Court finds that the Common Fund in this case shall be comprised of the judgment obtained by Class Counsel, including post-judgment interest, costs awarded by the U.S Court of Appeals for the Tenth Circuit, and a possible additional award of costs in this Court, all as more completely specified in the Agreed Order of June 8, 2011 (Doc. No. 662). Class Counsel currently estimates the Common Fund, including all of the requested costs in the pending bill of costs, to total approximately $15,673,892.50.

**D.      Requested Distributions from Common Fund to Class Members**

9.      Plaintiffs propose a plan of distribution whereby the Common Fund, following distributions to Class Counsel and to Class Representatives, and deduction of a reserve for payment of future administrative expenses, will be distributed to Class Members. The various elements of that plan of distribution are discussed below.

10.  Plaintiffs propose that Rust Consulting, Inc. be appointed as Administrator of the Common Fund and oversee distributions to Class Members. Rust Consulting is a national firm that specializes in the administration of class action funds and has served as administrator in at least thirteen class actions in Oklahoma state and federal courts. The Court finds that Rust Consulting is qualified and should be appointed as recommended.

11.  Plaintiffs request that $25,000 be reserved from the Common Fund to cover the cost of the Administrator and other post-May 31, 2011 expenses, including service and publication of the Notice. The Court finds that such amount is reasonable and appropriate.

12.  Plaintiffs propose that there be a First Distribution for Class Members, whereby each Class Member would be allotted a percentage share of the total distribution to Class Members. As proposed, the Class Member's share would be determined by taking the sum of the total square feet of the poultry houses operated by the Class Member during each month of the damages period (May 29, 1997 to February 2, 2008) and then comparing that sum with the total for all Class Members.

13.  Plaintiffs propose that, if necessary, there be a Second Distribution for Class Members, which would be comprised of: (a) any unused amount of the $25,000 reserve for administrative expenses; and (b) any funds remaining unclaimed after 180 days. As proposed, if any shares are unclaimed following the initial distribution to Class Members, the Administrator would be authorized to attempt to locate the Class Member or Members whose shares are unclaimed. Notwithstanding these efforts, if such shares remain unclaimed for 180 days following the initial distribution, the rights to the unclaimed shares would terminate and all unclaimed monies be redistributed to the participating Class Members using the same formula

for individual distributions as described above, but excluding the Class Members who did not timely claim their shares.

14.     Plaintiffs further propose that the Second Distribution may be avoided in certain circumstances and the funds instead be given to charity.  As proposed, if the Administrator deems the amount of funds too small to warrant a second distribution, the Administrator may recommend to the Court that the funds be donated for the benefit of the Carl Albert State College Foundation.

15.     The Court finds the proposed procedure to be reasonable and appropriate. Specifically, the Court finds the proposed formula to be used in calculating distributions to Class Members to be reasonable in light of the specific claim upon which the Class prevailed at trial and the damages awarded on such claim.  The Court notes that, if the Administrator requests that the Second Distribution be avoided and the funds instead be given to charity, the Court, upon receipt of that recommendation, may require that notice and an opportunity to be heard be given to Class Members before the recommendation will be adopted.

**E.     Requested Distributions from Common Fund to Class Counsel**

16.     Federal Rule of Civil Procedure 23(h) states that in certified class actions "the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement."

17.     Attorneys who recover a common fund for a class are entitled to a reasonable fee, costs, and expenses from the fund. *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *see also Gottlieb v. Barry*, 43 F.3d 474, 482 (10th Cir. 1994).  Further, the contracts between the Class Representatives and Class Counsel state that if a judgment was obtained on behalf of the

Class, Class Counsel would receive: (1) reimbursement of all expenses advanced in the lawsuit, and (2) 50% of the remainder of the fund as an attorney's fee.

<u>Reimbursement of Costs and Expenses Incurred by Class Counsel</u>

18. Both by motion and at the hearing held July 15, 2011, Class Counsel submitted the Affidavit of Harry A. Woods, Jr., which was admitted as Exhibit 4. That Affidavit includes an itemization of the actual expenses incurred by Class Counsel from the beginning of the lawsuit through May 31, 2011. The expenses were contemporaneously recorded by Class Counsel throughout the nine years of the case. *See* Woods Aff. at ¶¶ 8-11.

19. Through May 31, 2011, Class Counsel incurred $434,512.97 in costs and expenses. *Id.*

20. Recognizing that the Court previously awarded Class Counsel $50,000 in costs and expenses in connection with the settlement of the Class's breach of contract claims, Class Counsel deducted that amount from its request. Class Counsel requests reimbursement of taxable and nontaxable costs and expenses of $384,512.97.

21. Upon review of the evidence, including the itemization of expenses, the history of the case, and Mr. Woods' Affidavit, the Court finds that the expenses as requested by Class Counsel are reasonable and were necessarily incurred, and should be awarded to Class Counsel from the Common Fund.

<u>Attorney's Fees for Class Counsel</u>

22. Class Counsel has requested an attorney's fee of 42% of the Common Fund, following deduction of expenses.

23. In the past two decades, the dominant method of awarding attorney's fees in Common Fund cases has shifted from the lodestar approach to the percentage-of-the-fund

approach. *Rosenbaum v. MacAllister*, 64 F.3d 1439, 1445 (10th Cir. 1995). Courts using this approach authorize a fee award to class counsel based on a percentage determined to be appropriate under the circumstances. This change was hastened by the Supreme Court's direct statement that "under the 'common fund doctrine,' ... a reasonable fee is based on a percentage of the fund bestowed on the class." *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984). Other Courts have also found that the percentage-of-the-fund approach: (1) aligns the interests of the class and its counsel (*Kirchoff v. Flynn*, 786 F.2d 320, 325 (7th Cir. 1986)); (2) approximates the market by basing the fee award on what private counsel ordinarily would charge in contingent matters (*In re Cont'l Ill. Sec. Lit.*, 962 F.2d 566, 572 (7th Cir. 1992)); and (3) avoids the burdensome and complicated process of preparing and evaluating lodestar-based fee requests (*Shaw v. Toshiba Am. Info. Sys.*, 91 F. Supp. 2d 942, 963 (E.D. Tex. 2000)).

24. The Tenth Circuit has expressed a preference for the percentage-of-the-fund approach. *See Uselton v. Comm'l Lovelace Motor Freight, Inc.*, 9 F.3d 849 (10th Cir. 1993); *Gottlieb v. Barry*, 43 F.3d 474, 482 (10th Cir. 1994)). Regardless of the approach used, the Tenth Circuit has held that the trial court must consider the twelve factors identified in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974), *overruled on other grounds by Blanchard v. Bergeron*, 489 U.S. 87 (1989). *See Gottlieb*, 43 F.3d at 482-83; *Brown v. Phillips Petroleum Co.*, 838 F.2d 451, 454 (10th Cir. 1988). The Tenth Circuit's "approach has been called a 'hybrid' approach, combining the percentage fee method with the specific factors traditionally used to calculate the lodestar." *Gottlieb*, 43 F.3d at 482-83.

25. The twelve *Johnson* factors are: (1) the time and labor required; (2) the novelty and difficulty of the question presented; (3) the skill required to properly perform the legal services; (4) whether the case precluded counsel from accepting other employment; (5) the

customary fee; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the dollar amount involved and the result obtained; (9) the experience, reputation, and ability of counsel; (10) the undesirability of the case; (11) the nature and length of the relationship with the client; and (12) awards in similar cases. *Johnson*, 488 F.2d at 717-19.

26.     At the July 15, 2011 hearing, Class Counsel presented three witnesses – Charles Been, Charles "Buddy" Neal, and Allan DeVore – as well as various affidavits/declarations in lieu of live testimony.

27.     Charlie Been is one of the five Class Representatives. Mr. Been testified about the difficulty of finding counsel to take the case, the agreement entered into between the Class Representatives and Crowe & Dunlevy, the work done over the nine years of the case, the support by Class Members for the requested fee award, and that his belief that the requested fee award should be approved. In addition, declarations for the other four Class Representatives were admitted into evidence. Each of them agrees that the requested 42% fee award is reasonable and should be approved. *See* Declarations of Blackwell, Fields, Frost, and Johnston, Exhibits 6 to 9.

28.     Buddy Neal, an attorney retained by Class Counsel to give an opinion as to the reasonableness of the requested fee award, is a former president of the Oklahoma Bar Association and frequently represents clients in complex commercial cases in eastern Oklahoma, including cases in this Court. Mr. Neal testified that he had reviewed, among other things for this case, the pleadings, motions, and filings by the parties, the orders of this Court and the Tenth Circuit, and the itemized time records kept by Class Counsel. Mr. Neal testified about the work done over the nine-year history of the case; the increased work from Class Counsel required by

the quality and activity of opposing counsel; the difficult and unusual legal issues presented by a claim based on the PSA and alleging a monopsony; and that under each of the *Johnson* factors this is a case that warrants the requested 42% fee award.

29.     Allan DeVore, also an attorney retained by Class Counsel to give an opinion as to the reasonableness of the requested fee award, is an oil and gas attorney in Oklahoma and frequently represents plaintiffs in large-scale class actions. Mr. DeVore testified that he had reviewed similar materials as Mr. Neal. Mr. DeVore testified about the business risk for attorneys in taking on contingent fee class actions, and in particular the substantial risk undertaken by Class Counsel in this case given the time that would be required and the lack of precedent. Mr. DeVore also testified about comparable fee awards in complex class actions in Oklahoma; that the fee award requested by Class Counsel was only a multiple of 1.22 over the lodestar, which is well within the accepted range of reasonableness; and that if anything he believes the fee to Class Counsel should be the full 50% agreed to between them and the Class Representatives, rather than the 42% actually requested by Class Counsel.

Awards in Similar Cases

30.     Finding comparable cases to this one is not a simple task. This case is the first known successful class action under PSA § 202(a). Moreover, virtually all percentage-of-the-fund cases involve settlements, rather than judgments. A recent survey examining 1,120 class actions, predominantly settlements, shows that for cases involving funds between $10 million and $20 million, the average attorney's fee award for the top quartile of cases was 42%. *See* Attorney Fee Awards in Common Fund Class Actions, 24 No. 2 CLASS ACTION REPORT 4 (Apr. 2003). Another source of comparison is the oil and gas class action settlements in Oklahoma, in which there are similarly large common funds and, at least in some cases, similarly complex

issues. In those cases, there is a consensus for a 40% fee award. *See, e.g., Cont'l Resources v. Conoco Inc.*, No. CJ-95-739 (Dist. Ct. of Garfield Cnty. Order of Aug. 22, 2005) ("The fee percentage in these types of cases is typically 40% of the gross fund."); Class Counsel's Motion for Attorney's Fees, Nontaxable Costs, and Class Representative Fees (Doc. No. 665), at p. 11 and Exhibits 10-22 (collecting cases).

31.     Considering all the evidence, and given that this case did not settle but was prosecuted to judgment and through two appeals, this Court finds that this factor supports the requested 42% fee award.

Dollar Amount Involved and Result Obtained

32.     The U.S. Supreme Court has stated that the result obtained is the most important factor when determining an appropriate attorney's fee. *See Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983); *see also Brown*, 838 F.2d at 456 (stating this factor properly may be given greater weight than others); *Millsap v. McDonnell Douglas Corp.*, 2003 WL 21277124, at *12 (N.D. Okla. May 28, 2003).

33.     The Court finds that Class Counsel achieved remarkable success for the Class. The judgment represents 100% of the claimed damages (in fact, the jury originally awarded greater damages than were requested). Further, in the PSA's 90-year history, to Plaintiffs' and the Court's knowledge, the judgment in this case marks the first successful class action under PSA § 202(a), and only the second successful private § 202(a) action of any kind.

34.     Considering all the evidence, the Court finds that this unprecedented result warrants the requested fee award.

Time and Labor Required

35.    The Court finds that Class Counsel engaged in nine years of litigation, including extensive and contentious discovery, a near trial, an appeal to the Tenth Circuit, a jury trial, another appeal to the Tenth Circuit, and a petition for writ of certiorari to the U.S. Supreme Court.  Defendants were represented by multiple attorneys from two law firms, who vigorously defended their clients.  During the course of this litigation, Class Counsel:

- investigated the facts, researched potential claims, developed a successful legal strategy, and drafted the complaint;
- presented a motion for injunctive relief following the termination of the Class Representatives (within days of suit being filed);
- engaged in extensive document discovery, reviewing thousands of pages of documents at Defendants' facilities and warehouses in Fort Smith, Arkansas;
- obtained and analyzed an electronically-stored database of statistical information, including obtaining at the Firm's expense computer hardware and software to access such electronic data;
- took or defended 28 depositions of fact witnesses;
- selected an expert, assisted that expert in collecting data and conducting analyses, defended the expert in deposition, and opposed *Daubert* motions filed by Defendants;
- reviewed reports by Defendants' four experts, deposed those experts, and prepared *Daubert* motions as to Defendants' experts;
- opposed 18 separate motions to dismiss, motions for judgment on the pleadings, and motions for summary judgment;
- prepared for one near-trial and oversaw a limited settlement of certain claims to permit immediate appeal of Plaintiffs' claim for violation of § 202(a) of the PSA;
- successfully appealed the initial disposition of the § 202(a) claim to the U.S. Court of Appeals for the Tenth Circuit;
- upon remand of the case, engaged in further discovery, including additional expert reports, expert depositions, and *Daubert* motions;
- successfully opposed an additional motion for summary judgment (the 19th dispositive motion filed by Defendants);
- prepared and presented the case for trial, obtaining a judgment of $14,511,935;
- successfully opposed Defendants' post-trial motions for judgment as a matter of law and for new trial;
- successfully opposed Defendants' appeal to the Tenth Circuit, obtaining an affirmance of the judgment;

- successfully opposed Defendants' petition for rehearing or hearing en banc filed with the Tenth Circuit;

- successfully opposed Defendants' petition for writ of certiorari to the U.S. Supreme Court; and

- participated in three settlement conferences and other settlement discussions.

36.     Bringing this case to a successful result demanded a significant commitment of time and resources, ultimately totaling – through May 31, 2011 – almost 20,000 hours by Crowe & Dunlevy timekeepers. Mr. Neal testified that he had examined the itemized time records kept by Class Counsel over the course of the case and, in his opinion, the time spent was reasonable and necessary. Such records were also presented to the Court and admitted as Exhibit 10. Upon review, the Court finds that the time spent by Crowe & Dunlevy was reasonable and necessary. The Court notes that in a contingent fee action there is little incentive for attorneys to "churn" a file, that is to work more hours than necessary to accomplish a favorable result. In other words, had Class Counsel been able to obtain the same result while spending less time, they certainly would have done so.

37.     Considering all the evidence, the Court finds that the extraordinary amount of time and labor demanded of Class Counsel warrants a fee award of 42%.

### The Novelty and Difficulty of the Question Presented and the Skill Required to Properly Perform the Legal Services

38.     These factors are considered together. In determining a reasonable attorney's fee award, courts emphasize the risk undertaken by counsel: complex cases justify higher fees, and simple cases lower fees. *See* Robert L. Rossi, 1 ATTORNEY'S FEES § 5:4 (3d ed. & Supp. July 2008). In particular, cases of first impression – which present greater uncertainty and require extra time and effort – can warrant higher fee awards to compensate the attorneys who accept them. *See Johnson*, 488 F.2d at 718 ("Cases of first impression generally require more time and

effort on the attorney's part. ... [Counsel] should be appropriately compensated for accepting the challenge."); *Millsap*, 2003 WL 21277124, at *9 (an enhanced fee is appropriate where plaintiffs "faced a significant legal obstacle and accepted tremendous risk by proceeding with the case" where most authority was adverse to them).

39.     The Court finds that when Plaintiffs brought their PSA claim, there was no controlling precedent or history of analogous claims.  One of the significant challenges Plaintiffs faced was the determination of whether they had to prove an anticompetitive injury.  Not only was this an issue of first impression in the Tenth Circuit, *see Been v. O.K. Industries, Inc.*, 495 F.3d 1217, 1221 (10th Cir. 2007) ("This appeal presents a matter of first impression in this Circuit."), but, as explained by the Tenth Circuit, significant adverse precedent confronted Plaintiffs.  *Id.* at 1228-29 (explaining that other circuits concluded that PSA § 202(a) required proof of anticompetitive injury, citing cases from the 6th, 7th, 8th, 9th, and 11th Circuits).  Both Mr. Neal and Mr. DeVore testified that, in their experience, there are few attorneys in the entire State who would have been willing or able to handle this complex and unusual case.

40.     Considering all the evidence, the Court finds that both the novelty and difficulty of the questions of law presented by this case, and the skill required to properly perform the legal services necessary in this case, amply support the requested fee award.

<u>Whether the Case Precluded Counsel from Accepting Other Employment</u>

41.     As stated previously, Class Counsel, through May 31, 2011, spent almost 20,000 hours prosecuting this case.  In particular, the four principal attorneys who worked on the case spent almost 14,000 hours.  Mr. Neal testified, and this Court finds, that were it not for this substantial commitment of time, Class Counsel would have been able to work on other – likely non-contingent – matters in their law practice.

42.     Considering all the evidence, this Court finds that by accepting this case, and spending the time necessary to achieve a successful result, Class Counsel gave up substantial billable work and, accordingly, this factor amply supports the requested fee award.

<u>The Customary Fee</u>

43.     A useful measure of the customary fee for a particular case is the fee agreed to when the full difficulty and uncertainty of the case lies ahead, and there is no assurance of recovery. *See, e.g., Blanchard*, 489 U.S. at 93 ("The presence of a pre-existing fee agreement may aid in determining reasonableness. 'The fee quoted to the client of the percentage of the recovery agreed to is helpful in demonstrating attorney's fee expectations when he accepted the case.'") (quoting *Penn. v. Del. Valley Citizens' Council for Clean Air*, 483 U.S. 711, 723 (1987)); *Johnson*, 488 F.2d at 718 (stating courts should consider the percentage agreed to in the contingent fee agreement between counsel and the class representatives); *Millsap*, 2003 WL 21277124, at *7 (stating that one measure of reasonableness is the contingent fee negotiated at the outset of the case while risk of loss still exists). Here, reflecting the degree of risk that existed at the start of this case, Class Counsel and Class Representatives agreed to a 50% contingent fee.

44.     Mr. Been testified that, prior to Crowe & Dunlevy agreeing to take the case, Class Members had approached six or more other attorneys, all of whom had declined in light of the case's significant costs and risk. Mr. Been further testified that he believed the original agreement of a 50% fee was fair.

45.     Mr. DeVore testified that, based on his assessment of the difficulty of the claims at issue and the risk of not obtaining any recovery, he would not have accepted this case for less than a 50% contingent fee. Mr. DeVore further testified that, in his opinion, a 50% fee for cases

comparable to this one was customary in Oklahoma and reasonable in this case. Mr. Neal also testified that a 50% contingent fee for cases that proceed through trial and appeal is customary within the Eastern District of Oklahoma.

46. Class Counsel, however, seeks an award that is lower than the percentage negotiated in light of the risks then known. Considering all the evidence, the Court finds that a 50% contingent fee is customary and reasonable for cases presenting similar difficulty and risks as this one and, accordingly, this factor amply supports the requested 42% fee award.

<u>Whether the Fee is Fixed or Contingent</u>

47. Courts agree that a larger fee is appropriate in contingent matters where payment depends on the attorney's success. *See Rossi, supra*, § 5:8. The U.S. District Court for the Northern District of Illinois has explained this rationale as follows:

> Fees that are contingent on success present definite risks. Payment, if any, is deferred, and there is always a risk, often a substantial risk, that there may be no payment at all.
>
> ...
>
> [R]isk demands a premium. And, as a general rule, the greater the uncertainty of payment the greater the premium should be. Risk must be assessed ex ante. Lawyers make decisions about whether to bring lawsuits on the basis of the risks and rewards they perceive at the beginning and must be compensated on the basis of the risks as they appeared at the beginning, not as the court perceives them at the end of the litigation.

*In re Superior Beverage/Glass Container Consol. Pretrial*, 133 F.R.D. 119, 127 (N.D. Ill. 1990).

48. Mr. DeVore testified about the risks inherent to serving as class counsel in a large and complex class action. Here, if Plaintiffs had not prevailed, Crowe & Dunlevy would have invested thousands of hours of time and hundreds of thousands of dollars in expenses but recovered nothing in return. Nevertheless, Crowe & Dunlevy accepted the case and, moreover,

proceeded with the case even after the District Court had originally granted summary judgment against Plaintiffs.

49.     Considering all the evidence, the Court finds this was a contingent fee case whereby Class Counsel undertook extraordinary risk of no recovery and, accordingly, this factor supports the requested fee award.

### The Time Limitations Imposed by the Client or the Circumstances

50.     The Court finds that the time spent by the individual attorneys in the case, as demonstrated by the time records submitted by Class Counsel, demonstrate that throughout the nine-year history of the case, Firm attorneys worked long hours, including nights and weekends, committing a great deal of time and effort to meet numerous deadlines and to otherwise advocate for the benefit of the Class. While this factor is not given as much weight as others, it illustrates the personal sacrifice made by Class Counsel. Considering all the evidence, the Court finds that this factor also supports the fee requested.

### Experience, Reputation, and Ability of Counsel

51.     All three witnesses – Mr. Been, Mr. Neal, and Mr. DeVore – testified to the high level of experience, reputation, and ability of Crowe & Dunlevy in general and Harry Woods, Mack Morgan, Charles Goodwin, and Chris Woods in particular, as well as Dean Emeritus Andy Coats of the University of Oklahoma College of Law who argued the second appeal before the Tenth Circuit. Class Counsel's qualifications were undisputed for purposes of class certification. The Court finds that this factor also supports the fee requested.

### Undesirability of the Case

52.     Courts have recognized that, in order to ensure that people who have been wronged have access to counsel, special consideration should be made in setting fees for class

counsel who accepted a case viewed as undesirable. *See Johnson*, 488 F.2d at 719; *see also Millsap*, 2003 WL 21277124, at *11 (explaining that this factor deserves "significant weight" when counsel accepts a case despite few firms having succeeded in similar cases).

53.     The Court has previously discussed the lack of prior successful similar cases and the number of attorneys who had declined to take this case. At the hearing held July 15, 2011, Class Counsel explained that the prospect of long and expensive litigation and the need of the Class Members for legal counsel was clear from the beginning; however, it was uncertain whether there was any legal theory that could be relied on to readily and assuredly provide them relief. Nevertheless, Crowe & Dunlevy agreed to accept the case, understanding that it would represent a substantial investment of time and resources.

54.     Mr. Neal and Mr. DeVore also testified that, in their experience, had Crowe & Dunlevy not accepted this case, it likely would not have been accepted by any law firm in the State of Oklahoma. Considering all the evidence, the Court finds that this factor supports the requested fee.

### Conclusion Regarding *Johnson* Factors

55.     Upon evaluation of each of the *Johnson* factors, and considering all the evidence, the Court finds that the requested 42% fee award is reasonable.

### Application of Lodestar Approach as Cross-Check

56.     As discussed above, the Tenth Circuit has stated its preference for the percentage-of-the fund approach in determining the reasonableness of a fee request in a common fund case. However, courts using the percentage-of-the-fund approach frequently also evaluate the request under the alternative "lodestar approach" as a means of verifying the result. In the lodestar approach, a reasonable attorney's fee is calculated by determining the lodestar amount – *i.e.*, the

number of hours counsel reasonably expended multiplied by a reasonable rate for similar work –

and then multiplying the lodestar amount by a subjective "multiplier" to compensate for the risk

of litigation. As explained:

> [T]he ratio of the percentage-based fee to the lodestar-based fee implies a
> multiplier, and that multiplier can be evaluated for reasonableness. If the implied
> multiplier is reasonable, then the cross-check confirms the reasonableness of the
> percentage-based fee; if the implied multiplier is unreasonable, the court should
> revisit its assumptions.

Vaughn R. Walker and Ben Horwich, *The Ethical Imperative of a Lodestar Cross-Check:*

*Judicial Misgivings About "Reasonable Percentage" Fees in Common Fund Cases*, 18

GEORGETOWN J. LEGAL ETHICS 1453, 1463 (2005).

57.     A multiplier of four or less is commonly accepted as reasonable. *See, e.g., Roe v.*

*Cheyenne Mountain Conference Resort, Inc.*, 124 F.3d 1221, 1233 n.8 (10th Cir. 1997); 4

NEWBERG ON CLASS ACTIONS § 14:6 (4th ed. & Supp. June 2008) ("Multiples ranging from one

to four frequently are awarded in common fund cases when the lodestar method is applied. A

large common fund award may warrant an even larger multiple."); *Attorney Fee Awards in*

*Common Fund Class Actions*, 24 No. 2 CLASS ACTION REPORT 4 (Apr. 2003) (reporting average

multiplier of 3.89 in survey of 1,120 class action cases). Mr. DeVore testified that, in his

experience, for complex class actions a multiplier of as much as ten is not unusual.

58.     The Court finds that the lodestar amount for this case would be approximately

$5,275,703.50. The Affidavit of Harry Woods and the contemporaneous time records submitted

by Class Counsel confirm that, through May 31, 2011, Crowe & Dunlevy timekeepers spent

19,812.20 hours prosecuting this case. Consistent with Supreme Court precedent, that amount

includes time spent by all billable timekeepers, including attorneys, legal assistants, and law

clerks. *See Missouri v. Jenkins*, 491 U.S. 274, 285 (1989) (noting the "self-evident proposition"

that a reasonable attorney's fee includes work performed by paralegals and law clerks). Applying current hourly rates for each timekeeper to the time spent by that timekeeper results in a lodestar of $5,275,703.50. *See Jenkins*, 491 U.S. at 282-84 ("[A]n appropriate adjustment for delay in payment – whether by the application of current rather than historic hourly rates or otherwise" – is properly part of a reasonable attorneys' fee because "compensation received several years after the services were rendered ... is not equivalent to the same dollar amount received reasonably promptly as the legal services are performed, as would normally be the case with private billings."); *Bratcher v. Bray-Doyle Ind. Sch. Dist. No. 42*, 8 F.3d 722, 726 (10th Cir. 1993) (delay in payment may be remedied by application of current rather than historic hourly rates).

59.     Class Counsel has requested an attorney's fee award of 42% of the Common Fund.     Class Counsel estimates that the Common Fund currently totals approximately $15,673,892.50. After deducting costs to Class Counsel of $409,512.97 (which includes a $25,000 reserve for projected costs, any unused portion of which would be repaid to the Common Fund), the Common Fund would equal $15,264,379.53.  Applying those figures, the requested 42% fee award to Class Counsel would total $6,411,039.40.[2]

60.     Class Counsel's request for a 42% award, or approximately $6,411,039.40, would result in a lodestar multiplier of 1.22 ($6,411,039.40 ÷ $5,275,703.50 = 1.22).  The Court finds that this multiplier is well within the range of what courts accept as *per se* reasonable.  In fact, the 1.22 multiplier is so low that the requested award would be *per se* reasonable even if the lodestar were cut in half ($6,411,039.40 ÷ $2,637,851.75 = 2.43).

---

[2] Had Class Counsel not reduced its request from 50% – as provided in the contingent fee contracts – to 42%, the amount at issue would be $7,632,189.77, giving Class Counsel an additional $1.2 million in fees.  All of Mr. Been, Mr. Neal, and Mr. DeVore commended Class Counsel for reducing its request to 42%.

61. Accordingly, the Court finds that application of the lodestar approach confirms the reasonableness of the request by Class Counsel for a 42% fee award.

**F.    Requested Distributions from Common Fund to Class Representatives**

62. Class Counsel has requested a fee of $100,000 be paid from the Common Fund to each of Charles Been, Donald Frost, Edwin Johnston, Bob Fields, and Gene Blackwell for their service as Class Representatives in this case.

63. Courts routinely approve incentive awards "to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 145 (E.D. Pa. 2000); *see also Bynum v. Dist. of Columbia*, 412 F. Supp. 2d 73, 81 (D.D.C. 2006) (awarding $200,000 incentive fee to named plaintiffs for their contribution to the class); *Cimarron Pipeline Constr., Inc. v. Nat'l Council on Compensation Ins.*, 1993 WL 355466, at *2 (W.D. Okla. June 8, 1993). When considering an appropriate fee, courts typically consider three factors: (1) the actions the Class Representatives took to protect the interests of the class and the amount of time spent; (2) whether the Class Representatives' actions resulted in a substantial benefit to the class; and (3) the risks that the Class Representatives assumed. *See Enter. Energy Corp. v. Columbia Gas Trans. Corp.*, 137 F.R.D. 240, 250 (S.D. Ohio 1991) (awarding $50,000 to each named plaintiff); *see also Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998).

64. The Court finds – as demonstrated through the testimony of Mr. Been, the Declarations of Mr. Frost, Mr. Johnston, Mr. Fields, and Mr. Blackwell, and the Affidavit of Harry Woods – that the five Class Representatives devoted substantial time and energy representing the interests of the Class and that such efforts were critical to the Class obtaining a successful judgment in this case. Mr. Been testified that, for the nine years of litigation, each of

the Class Representatives was actively involved in this case, including communicating with Class Counsel, communicating with Class Members, giving depositions, attending and representing the Class in settlement conferences, assisting with preparation for and attending trial, testifying or being available to testify at trial, and continuously reviewing and commenting on copies of the filings made by the parties in this Court and in the Tenth Circuit. The Affidavit of Harry Woods confirms the substantial work performed by the Class Representatives and the importance of their day-to-day assistance in obtaining a judgment on behalf of the Class.

65. Further, the Court finds that the five Class Representatives assumed a significant risk by agreeing to serve as the named plaintiffs in this case, one that other Class Members were not willing to accept despite their support for the lawsuit. Without determining whether Defendants in fact retaliated against Mr. Been, Mr. Frost, Mr. Johnston, Mr. Fields, and Mr. Blackwell for their role in the lawsuit, the Court finds that there is evidence to support Class Counsel's belief that they did. Mr. Been testified that within days of this case being filed, Defendants terminated each of the Class Representatives. Only after Class Counsel moved for injunctive relief did Defendants reinstate the Class Representatives. In the interim, the Class Representatives were denied flocks to grow, resulting in a substantial loss of income. Mr. Been testified that, even after their reinstatement, the Class Representatives experienced a consistent decrease in their gross income from raising chickens. Finally, Mr. Been testified that of the five Class Representatives, four were in one way or another driven out of operation prior to the lawsuit going to trial in March 2008, and that the last of the five to remain in operation, Gene Blackwell, was driven out of business shortly after the trial. Mr. Been testified that Mr. Blackwell's poultry farm has now been foreclosed on and the property sold. The Declarations for the other four Class Representatives give similar testimony.

66.     Considering all the evidence, the Court finds that the requested $100,000 fee is reasonable and should be awarded to each of the Class Representatives.

## CONCLUSIONS OF LAW

In view of the findings of fact discussed above, the Court recommends the following conclusions of law.  Where a finding of fact is deemed to be more appropriately a conclusion of law, it should be treated as such.

1.     This action has created a common fund, consisting of the judgment amount, post-judgment interest, costs awarded by the U.S Court of Appeals for the Tenth Circuit, and any additional award of costs in this Court, all as further specified in the Agreed Order of June 8, 2011 (Doc. No. 662) (the "Common Fund").  The Common Fund currently is estimated by Class Counsel to total as much as $15,673,892.50; however, the precise amount is subject to change.

2.     Pursuant to Fed. R. Civ. P. 23(h), distribution of $384,512.97 shall be made from the Common Fund to Class Counsel for reimbursement of its costs and expenses.

3.     Pursuant to Fed. R. Civ. P. 23(h), distribution of 42% of the Common Fund (following deduction of the $384,512.97 award of costs and expenses) shall be made from the Common Fund to Class Counsel as an attorney's fee.

4.     Distribution of $100,000 shall be made from the Common Fund to each of Charles Been, Donald Frost, Edwin Johnston, Bob Fields, and Gene Blackwell as a Class Representative fee.

5.     Distribution to Class Members of the remainder of the Common Fund shall be made as set forth below, provided that $25,000 shall be held in reserve and used to pay post-May 31, 2011 administrative expenses, including compensation of the Administrator of the Common Fund.

6.     Rust Consulting, Inc. shall be appointed as Administrator of the Common Fund, and is authorized to:

(a)     oversee any notices to Class Members required by the Court;

(b)     oversee and make recommendations to the Court regarding requests to be recognized as a Class Member;

(c)     search for and attempt to contact Class Members for whom no address or contact information is known;

(d)     calculate individual distributions to Class Members in accordance with the formula set forth herein, and recommend to the Court a schedule of distribution to Class Members;

(e)     upon approval by the Court of the schedule of distribution to Class Members, issue checks to the Class Members for their respective distributions;

(f)     following expiration of a 180-day period from the date of the initial distributions to Class Members, and upon approval of the Court, oversee redistribution of any remaining funds to individual Class Members;

(g)     to the extent required by state and/or federal law, file tax returns for the Common Fund and make any necessary payment thereon from the Common Fund;

(h)     as required, withhold from distributions to Class Members any monies which must be paid to state and/or federal tax authorities, issue tax-related forms and notices to Class Members (including but not limited to a W-9 Request for Taxpayer Identification Number), and issue tax-related forms and reports to state and/or federal tax authorities;

(i)     perform reasonable services necessary to accomplish the duties stated herein, and be paid from the Common Fund for those services;

(j)     incur reasonable administrative expenses necessary to accomplish the duties stated herein, and be reimbursed from the Common Fund for those expenses at their actual charge; and

(k)     make reports to the Court as reasonably appropriate, including whenever there is a material change in circumstances.

7.     A "First Distribution" to Class Members shall be made from the Common Fund, with individual distributions to be made based on the square footage of each Class Member's

23

poultry houses for each flock of chickens raised by each Class Member during the damages period (May 29, 1997, to February 2, 2008). This data will be used by the Administrator to create an index showing each Class Member's total square footage for each month of the damages period. The total square footage for each Class Member will then be compared to the aggregate square footage for all Class Members to determine each Class Member's percentage share of the total distribution to Class Members.

8.      If, after 180 days from the initial distribution to Class Members, there are any funds that have not been claimed by any Class Members, the rights to the unclaimed funds shall terminate, and all remaining funds be redistributed to those Class Members who claimed their initial distributions.

9.      A "Second Distribution" to Class Members shall be made from the Common Fund, comprised of: (a) any unused amount of the $25,000 reserve for administrative expenses; and (b) any funds remaining unclaimed after 180 days. The Administrator will calculate individual distributions to Class Members for the Second Distribution in accordance with the formula used for the First Distribution, but excluding the Class Members who did not claim their shares.

10.     If the Administrator deems the amount of funds subject to a Second Distribution to be too small to warrant distribution, the Administrator may recommend to the Court that the funds be donated for the benefit of the Carl Albert State College Foundation. At that time, the Court may require that notice and an opportunity to be heard be given to Class Members before the recommendation will be adopted.

11.     Plaintiffs have applied for taxation of $148,501.95 in costs against Defendants. *See* Plaintiffs' Bill of Costs and supporting brief and documentation (Doc. Nos. 546-549).

Plaintiffs' application remains pending. The disposition of that application will affect the amount of the Common Fund, and thus distributions to Class Counsel and the Class Members (the amount of the Class Representative fees is static and so will not be affected). If there is not a final ruling on Plaintiffs' Bill of Costs prior to the time for distribution to Class Counsel and/or the First Distribution to Class Members, then such distributions shall proceed under the assumption that none of the costs in Plaintiffs' Bill of Costs will be added to the Common Fund. Subsequently, at such time as any costs are awarded, the additional funds will be distributed in such amounts as required to reconcile the prior distributions to what they would have been if the full amount of the Common Fund had been available for distribution. If possible, insofar as Class Members, this additional distribution will be made as part of the Second Distribution discussed above.

12.     Defendants took no position with respect to the relief requested in Plaintiffs' Motion to Approve Plan of Distribution (Doc. No. 664) and Class Counsel's Motion for Attorney's Fees, Nontaxable Costs, and Class Representative Fees (Doc. No. 665). In any event, Defendants lack standing to object regarding proposed distributions from the Common Fund in this case. *See Town of New Hartford v. Conn. Res. Recovery Auth.*, 970 A.2d 583, 590-92 (Conn. 2009) (citing cases); *Boeing Co. v. van Gemert*, 444 U.S. 472, 481 n.7 (1980) (observing that defendant "had no cognizable interest in further litigation between the class and its lawyers over the amount of the fees ultimately awarded from money belonging to the class").

## CONCLUSION

Accordingly, the undersigned recommends that Plaintiffs' Motion to Approve Plan of Distribution (Doc. No. 664) and Class Counsel's Motion for Attorney's Fees, Nontaxable Costs, and Class Representative Fees (Doc. No. 665) be GRANTED, as more specifically set forth

above. The parties are herewith given fourteen (14) days from the date of the service of these Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

ENTERED this 16th day of August, 2011.

KIMBERLY E. WEST
United States Magistrate Judge